

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

FILED by ___ D.C.

JUN 0 4 2007

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S. D. OF FLA.- MIAMI

### CASE NO:

07-21433

CIV-LENARD

/ TORRES

LARRY STEWART, DAVID PUITTINEN, RICK MAHONEY,
ROBERT LEVY, HARLEY McDOUGALL, WILLIAM MEDLIN,
and WILLIAM MARVEL, as Trustees of the
SHEET METAL WORKERS LOCAL UNION NO. 32
PENSION TRUST FUND, SHEET METAL WORKERS
LOCAL UNION NO. 32 HEALTH AND WELFARE TRUST FUND,
and SHEET METAL WORKERS LOCAL UNION NO. 32
JOINT APPRENTICESHIP AND TRAINING FUND,

and

MIKE SULLIVAN, RONALD PALMERICK, MARC NORBERG,
BRUCE STOCKWELL, KEN ALEXANDER, PHIL MEYERS,
PAUL COLLINS, JR., and R. DEAN STEWARD
as Trustees of the Sheet Metal Workers National Pension Fund,

Plaintiffs,

vs.

INDUSTRICAL MECHANICAL SYSTEMS, LLC

Defendants.
_____/

### COMPLAINT

Plaintiffs LARRY STEWART, DAVID A. PUITTINEN, RICK MAHONEY, ROBERT
LEVY, HARLEY McDOUGALL, WILLIAM MEDLIN, and WILLIAM H. MARVEL, JR., as
Trustees of the SHEET METAL WORKERS LOCAL UNION NO. 32 PENSION TRUST
FUND, SHEET METAL WORKERS LOCAL UNION NO. 32 HEALTH AND WELFARE
TRUST FUND, and SHEET METAL WORKERS LOCAL UNION NO. 32 JOINT
APPRENTICESHIP AND TRAINING FUNDS (the "Trustees" or the "Funds") sue Defendant
INDUSTRICAL MECHANICAL SYSTEMS, LLC as follows:

## I.   NATURE OF ACTION, JURISDICTION, AND VENUE

1.   This is a delinquent contributions collection action, brought by the Trustees on behalf of the Funds, which arises under the laws of the United States that contain their own jurisdictional requirements: Sections 502 and 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1132 and §1145.

2.   Pursuant to Section 502(e)(2) of ERISA, 29 U.S.C. §1132(e)(2), venue is proper in this Court because the Trustees administer the Funds and Defendant's breach occurred in Miami-Dade County, Florida.

## II.   PARTIES

3.   The Trustees have been at all times material hereto, trustees and fiduciaries within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. §1002(21)(A).

4.   The Funds are "employee benefit plans" and "multiemployer plans" as defined by Sections 3(3) and 3(37) of ERISA, 29 U.S.C. §1002(3) and §1002(37).

5.   Upon information and belief, Defendant is a corporation organized and existing under the laws of the State of Florida.

6.   Defendant is an "Employer" within the meaning of Section 3(5) of ERISA, 29 U.S.C. §1002(5) and upon information and belief, maintains a business address at: 1181 S. Rogers Circle, #25, Boca Raton, Florida  33487.

## III.   CAUSE OF ACTION

7.   Defendant employed persons within the trade and territorial jurisdiction of the collective bargaining agreement, paid contributions to the Funds and thus, was obligated to pay fringe benefit contributions and other payments to the Funds.

8.   The obligation arises from Defendant, through the same above-referenced actions, being bound to a collective bargaining agreement, which is attached as Exhibit A.

9.   Defendant breached said agreement by failing to make full payment of all fringe benefit contributions and other payments due to the Funds for payroll periods after May 1, 2002.

10.    The Trustees have been required to employ the undersigned attorneys to collect the monies that are owed by Defendant, and are obligated to pay these attorneys a reasonable attorney's fee.

11.    The Trustees have complied with all conditions precedent in bringing this suit.

WHEREFORE, the Trustees respectfully request that this Court enter a Judgment against Defendant, providing:

a)    An award of damages for all unpaid fringe benefit contributions and other payments due for payroll periods after May 1, 2002, together with all liquidated damages, interest, and reasonable attorney's fees and costs; and,

b)    Such other relief as is just and proper.

Respectfully submitted,

**SUGARMAN & SUSSKIND, P.A.**
**Attorneys for the Trustees**
100 Miracle Mile, Suite 300
Coral Gables, Florida  33134
Tel.:    (305) 529-2801
Fax:    (305) 447-8115

By _____
MARCUS BRASWELL
Florida Bar No. 146160

This **29th** day of May, 2007

3

# COLLECTIVE BARGAINING AGREEMENT

**Entered Into Between**
**FLORIDA SMACNA, INC.**
**AND**
**SHEET METAL WORKERS'**
**INTERNATIONAL ASSOCIATION**
**LOCAL UNION NO. 32**

**AUGUST 12, 2006**
**TO**
**AUGUST 11, 2009**

**DADE, BROWARD, MONROE, LEE AND**
**COLLIER COUNTIES, FLORIDA**

Exhibit "A"

# INDEX

Apprentice Training Fund…………………………………………….... Page 15-16

Apprentice Wages and Fringes……………………………………………Page 16-17

Bonding…………………………………………………………………….Page 11

Classified Workers………………………………………………………...Page 18

Conditions of Employment……………………………………………….Page 2

Grievance………………………………………………………….……… Page 13,14-15

Heavy Industrial…………………………………………………………...Page 6

Hiring and Dispatching……………………………………………………Page 3

Holidays…………………………………………………………………...Page 4

Hours of Work…………………………………………………………….Page 4

Joint Trust Funds………………………………………………………….Page 10

Jurisdiction………………………………………………………………..Page 1

Pay Day…………………………………………………………………...Page 8

Pre-Apprentice…………………………………………………………….Page 17-18

Ratios……………………………………………………………………...Page 17-18

Request for manpower form……………………………………………...Page 23

Safety……………………………………………………………………..Page 13

Shift work………………………………………………………………...Page 5

Stewards…………………………………………………………………...Page 2-3

Substance Abuse Policy…………………………………………………...Page 20-21

Supervision………………………………………………………………..Page 2

Tool list…………………………………………………………………...Page 12

Travel Pay………………………………………………………………...Page 5-6

Wages……………………………………………………………………...Page 6-7, 16, 17 and
                                                                                                                    18

## STANDARD FORM OF UNION AGREEMENT
## SHEET METAL, ROOFING, VENTILATING AND AIR CONDITIONING
## CONTRACTING DIVISIONS OF THE CONSTRUCTION INDUSTRY

Agreement entered into this 12th day of August 2006 by and between Florida SMACNA, Inc. and each Business establishment individually, whether represented by a contractor association or not, hereinafter referred to as the Employer, and Local Union No. 32 of Sheet Metal Workers' International Association, hereinafter referred to as the Union for Dade, Broward, Monroe, Collier and Lee Counties, Florida

### ARTICLE I

SECTION 1. This Agreement covers the rates of pay and conditions of employment of all employees of the Employer engaged in but not limited to the: (a) manufacture, fabrication, assembling, handling, erection, installations, dismantling, conditioning, adjustment, alteration, repairing and servicing of all ferrous or nonferrous metal work and all other materials used in lieu thereof and of all HVAC systems, air veyor systems, exhaust systems and air-handling systems regardless of material used including the setting of all equipment and all reinforcements in connection therewith: (b) all lagging over insulation and all duct lining: (c) testing and balancing of all air-handling equipment and duct work; (d) the preparation of all shop and field sketches whether manually drawn or computer assisted used in fabrication and erection, including those taken from original architectural and engineering drawings or sketches; and (e) installation of proprietary and non proprietary metal roofing  and (f) all other work included in the jurisdictional claims of Sheet Metal Workers' International Association.

SECTION 2. The intent of this provision shall include and extend to all work within the trade jurisdiction of Sheet Metal Workers' International Association which requires a composite crew under International Agreement, or under local agreements, with other International Associations, or with other Local Unions.

### ARTICLE II

SECTION 1. No Employer shall subcontract or assign any of the work described herein which is to be performed at a jobsite to any contractor, subcontractor or other person or party who fails to agree in writing to comply with the conditions of employment contained herein including, without limitations, those relating to union security, rates of pay and working conditions, hiring and other matters covered hereby for the duration of the project.

SECTION 2. Subject to other applicable provisions of this Agreement, the Employer agrees that when subcontracting for prefabrication of materials covered herein, such prefabrication shall be subcontracted to fabricators who pay their employees engaged in such fabrication not less than the prevailing wage for comparable sheet metal fabrication, as established under provisions of this Agreement.

### ARTICLE III

SECTION 1. The Employer agrees that none but journeyman, apprentice, pre-apprentice and classified sheet metal workers shall be employed on any work described in Article I and further, for the purpose of proving jurisdiction, agrees to provide the Union with written evidence of assignment on the Employer's letterhead for certain specified items of work to be performed at a jobsite prior to commencement of work at the site. List of such specific items, which may be revised from time to time, as agreed to by and between SMACNA and SMWIA, shall be provided to the Employer.

SECTION 2.The Employer will provide all necessary information to the union to establish prevailing wage rates on Davis-Bacon jobsites when requested by the Government.

1

## ARTICLE IV

SECTION 1. The Union agrees to furnish upon request by the Employer duly qualified journeymen, apprentice, pre-apprentice, and classified sheet metal workers in sufficient numbers as may be necessary to properly execute work contracted for by the Employer in the manner and under the conditions specified in this Agreement. Requests for manpower will be made to the Union in writing on a standard form developed by the parties to this agreement. (See page 23 for form).

SECTION 2. Each Employer signing this Agreement hereby agrees that voluntary recognition shall be given the union upon proper authorization cards being presented showing that the union represents the majority of the Employer's employees covered by the Agreement.

## FOREMAN AND GENERAL FOREMAN

SECTION 3. Employees covered by this Agreement working on jobs or in shops shall not accept direction or instruction from or recognize the authority of anyone other than the employer or sheet metal foreman or general foreman designated and paid as such.

SECTION 4. Each firm, corporation, or company doing work coming under the jurisdiction of the Sheet Metal Workers' International Association shall designate a journeyman sheet metal worker as a foreman.

SECTION 5. A journeyman sheet metal worker shall be designated as foreman on any jobs having four (4) or more employees. No foreman may supervise more than ten (10) employees and that when two (2) or more Foremen are required on any one jobsite that one of them will be designated as a General Foreman.

SECTION 6. Commercial foremen shall receive a minimum of ten percent (10%) per hour above journeyman wage scale. Commercial general foremen shall receive a minimum of fifteen percent (15%) per hour above journeyman wage scale

SECTION 7. (a) Upon notifying the Union in writing, the Employer may recall an employee provided said employee has been employed by said Employer in the past 120 days.
(b) Employers will be permitted to call for an employee, an individual, by name, from the hiring hall regardless of his position on eligibility list "1" provided the employee called for is paid at foreman wages for the duration of that term of employment.

## STEWARDS

SECTION 8. It is recognized by the Employer that the person appointed Steward remains in the shop or on the Job as long as there is sheet metal work being done that he can perform. In the event a steward is laid off, he shall be the first man re-employed provided there is work being done that he can perform. In no event shall an Employer discriminate against a steward or lay him off or discharge him on account of any action taken by him in the performance of his Union duties. A contractor or his representative shall notify the Business Manager or Business Representative of his intention to lay off or discharge a steward forty-eight (48) hours (excluding Saturdays, Sundays, or holidays) prior to the intended layoff or discharge. This provision does not take precedence over shop or job foreman and general foreman.
   (a) In the event that overtime work is required, the shop steward shall be notified who shall notify the Union, before the work is performed.
   (b) In the event of overtime work, when it is practicable, the steward shall be one of those designated for such overtime employment.

SECTION 9. The Shop Steward shall be permitted to use the company phone on company time to call the Union office or receive calls from the Union office, provided these calls are related to Union business.

SECTION 10. Union Labels shall be in the custody of the Shop Steward at all times and shall be affixed to finished products during working hours under his direction.

HIRING & DISPATCHING (exclusive hiring hall)

SECTION 11. The Union shall be the sole and exclusive source of referrals of applicants for employment.

(a) The Union shall select and refer all applicants for employment without discrimination against such applicants by reason of or in any way affected by Union membership, by-laws, regulations, constitutional provisions or any other aspect or obligation of Union membership, policies or requirements.

(b) The Employer shall have the right to reject any applicant for employment, but only at the Employer's place of business or job site. The Employer shall not lay off or discharge an employee for upholding the work jurisdiction of the Sheet Metal Workers' International Association, AFL-CIO.

(c) Both the Union and the Employer agree to post a copy of the referral procedure set forth in this Agreement in places where notices to employees and applicants for employment are customarily posted.

(d) All employees bound by this contract will be issued a termination slip by the Employer at the time of termination.

SECTION 12. There shall be an eligibility list known as No. 1 and No. 2. List No. 1 will be a registered voter in one of the counties covered by the jurisdiction of Sheet Metal Workers' International Association Local No. 32, AFL-CIO, and must have established a working record in the sheet metal industry for a period of two (2) years within the jurisdiction of Local No. 32, AFL-CIO.

List No. 2:  All Others.

SECTION 13. Applicants for referral and employment who have two (2) years or more working record in the territorial area within the jurisdiction of Sheet Metal Workers' International Association Local Union No. 32 shall have priority for referral and employment over employees who have less than two (2) years working record in the territorial area within the jurisdiction of Sheet Metal Workers' Local Union No. 32.

SECTION 14. The Union will not make available men to any Employer who does not have and maintain the following insurance coverage, until such Employer has furnished satisfactory evidence that he has such coverage, to the Union, with a copy thereof to the Association:

> Unemployment Compensation; Worker's Compensation
> Public Liability and Property Damage

SECTION 15. The Union agrees to make available men to only such Employers who are signatory to an agreement with the Union and have the license required by State, County, City or Municipality.

SECTION 16. It is agreed by both parties to this Agreement that if the party of the first part (Sheet Metal Contractors) is unable or refuses to figure work that belongs to the members of Local Union No. 32, Local Union No. 32 has the right to place sheet metal workers on these jobs. In order that the Contractors may be familiar with all types of work which has been given the Sheet Metal Workers by Building and Construction Trades Department, Local Union No. 32 shall furnish the party of the first part with a copy of the awards.

**ARTICLE V**

SECTION 1. The Employer agrees to require membership in the Union, as a condition of continued employment of all employees performing any of the work specified in Article I of this Agreement, within eight (8) days following the beginning of such employment or the effective date of this Agreement, whichever is the later, provided the Employer has reasonable grounds for believing that membership is available to such employees on the same terms and conditions

3

generally applicable to other members and that membership is not denied or terminated for reasons other than the failure of the employee to tender the periodic dues and initiation fee uniformly required as a condition of acquiring or retaining the membership.

SECTION 2. If during the term of this Agreement the Labor Management Relations Act of 1947 shall be amended by Congress in such manner as to reduce the time within which an employee may be required to acquire union membership, such reduced time limit shall become immediately effective instead of and without regard to the time limit specified in Section I of this Article.

SECTION 3. The provisions of this Article shall be deemed to be of no force and effect in any state to the extent to which the making or enforcement of such provision is contrary to law. In any state where the making and enforcement of such provision is lawful only after compliance with certain conditions precedent, this Article shall be deemed to take effect as to involved employees immediately upon compliance with such conditions.

## ARTICLE VI

SECTION 1. (a)The regular working day shall consist of eight (8) hours labor in the shop or on the job between 6:00 a.m. and 6:00 p.m. and the regular working week shall consist of five (5) consecutive eight (8) hour day's labor in the shop or on the job, beginning with Monday and ending with Friday of each week. All full time or part time labor performed during such hours shall be recognized as regular working hours and paid for at the regular hourly rate. Except as otherwise provided pursuant to Section 4 of this Article, all work performed outside the regular working hours and performed during the regular work week, shall be at one and one half (1-1/2) times the regular rate.

(b) In lieu of the five day work week, when mutually agreed to by the Union and the Employer, the regular work week may consist of four (4) ten (10) hour work days. The regular work day would be scheduled for ten (10) hour days between 6:00AM and 6:00 PM and the regular work week shall begin on Monday and end on Thursday or begin on Tuesday and end on Friday. All labor performed during such hours shall be recognized as regular work hours and paid for at the regular hourly rate.

SECTION 2. New Year's Day, Memorial Day, Independence Day, Labor Day, Thanksgiving Day, Christmas Day or days locally observed as such, and Sundays shall be recognized as holidays. All work performed on holidays shall be paid at Double Time.

   (a)   If a holiday falls on Saturday; Friday shall be observed; if a holiday falls on Sunday; Monday shall be observed.
   (b)   There shall be no work performed on Labor Day except to save life or property.

SECTION 3. All work performed outside the regularly scheduled workday, Monday through Friday shall be compensated at one (1) and one half (1/2) times the regular rate. All work performed on Saturday shall be paid at one (1) and one half (1/2) times the regular rate. All work performed on Sundays and holidays shall be compensated at two (2) times the regular rate. Contractors may apply to the Business Manager for relief from the Sunday double time requirement. Employees shall be at the shop or project site at scheduled starting time each day and shall remain until quitting time. Any changes in regular working hours shall be approved in writing by the Business Manager for shop and job site.

SECTION 4. It is agreed that all work performed outside of regular working hours during the regular work week and on holidays shall be performed only upon notification by the Employer to the Union in advance of scheduling such work. Preference on overtime and holiday work shall be given to men on the job on a rotation basis so as to equalize such work as nearly as possible.

SECTION 5. Saturday may be used as a make up day if any of the 5 previously scheduled work days are lost because of conditions outside the employer's control or the employee's absence. In the case of the employee's absence, Saturday will only be used as a make up day if the contractor is scheduled to work on Saturday. The employee will not be obligated to work this make up day

SECTION 6. Shift work, and the pay and conditions therefore shall be only as provided in the following paragraphs:

(a) In the event that working hours are established in any job location due to city ordinances, the working hours of six (6:00) a.m. to six (6:00) p.m. as outlined in this Agreement will be changed to conform with the working hours prevailing at the job location, it being understood that the regular working day shall consist of eight (8) hours labor at regular time, and that work performed before or after the hour of starting and stopping time as established in an area will be paid at one and one-half (1 1/2) times the regular rate.

(b) It is agreed that shift work will be performed on outside jobs, and in shops. It is further agreed that employees shall be worked in shifts only on jobs which shall have at least three (3) consecutive eight (8) hour regular work nights with no less than two (2) journeymen on the job at all times, and only on jobs that cannot be performed during regular working hours. Such shift work shall be paid for at the rate of nine (9) hours pay for eight (8) hours work. It is further agreed that any employee who has worked any part of the regularly scheduled work day, shall not work the next shift except on the usual overtime basis.

**ARTICLE VII**

SECTION 1. (a)When employed in a shop or on a job employees shall be governed by the regular working hours specified herein and shall provide for themselves necessary transportation within the said limits from home to shop or job at starting time and from shop or job to home at quitting time, and the Employer shall provide, or pay, for all necessary additional transportation during working hours.

(b) A free zone of a fifty (50) mile radius which shall begin at the Employer's established metal shop situated in the territory of the Union and who has an executed labor agreement with Local Union 32 within the Local Union's territory or, at the Dade County Courthouse for those contractors who do not have an established metal shop within the Local Union 32's jurisdiction and whose principal place of business is not located within the jurisdiction of the Local Union.

SECTION 2. When employed outside of the limits specified in Section I of this Article, and within the jurisdiction of the Union, employees shall provide transportation for themselves which will assure their arrival at the limits specified in Section I of this Article at regular starting time, and the Employer, shall provide or pay for all additional transportation for such jobs including transportation from such job back to the limits specified in Section I of this Article which will assure arrival at such limits at quitting time. As an alternative to the foregoing method, travel expense may be paid by a zone or other method of payment.

| | |
|---|---|
| Zone (1) over 50 to 75 miles | $ 20.00 |
| Zone (2) over 75 miles | See Section 3 |

SECTION 3. When the Employer furnishes transportation on room and board jobs, travel other than during regular working hours shall be at time and one-half (1 1/2) paid for the first trip at the beginning of the job and at the completion of the job, for the last trip. When a man is discharged for disorderly conduct which affects his work, or he voluntarily quits while out of town, travel time, and transportation shall not be paid back to the shop. When Journeymen furnish their own transportation, in addition to the time and one-half (1 1/2) travel pay, they shall receive thirty-five cents ($0.35) per mile for their first trip to the job, and for their last trip to the shop at the completion of the job.

SECTION 4. All employees sent to room and board jobs and instructed to return from that job by a contractor or his representative before the completion of the job shall be paid travel and mileage pay in accord with Section 2 above.

SECTION 5. Adequate board and room subsistence (A.A.A. or Quality Court rated) for out of town work shall be furnished in advance by the Employer, or in lieu thereof, said Employer shall pay the sum of $50.00 per day in advance, based on a seven (7) day week, to each employee; it being understood that these sums refer to areas within the limits of the Continental United States.

SECTION 6. If an employer sends an Employee to perform work outside the territorial jurisdiction of the United States of America, travel pay and or subsistence arrangements shall be negotiated locally and individually between the employer and the employee.

SECTION 7. When an employee is sent to a job in an area requiring the payment of a toll and that area has only one means of egress, the employer shall reimburse the employee for the amount of such tolls. Examples would be the Rickenbacker Causeway or Sanibel Island.

SECTION 8. When an employee is required to report to a meeting place to receive instructions, or to perform other work there, or to pick up or to carry tools, the travel from designated place to the work place is part of the day's work, and shall be counted as hours worked.

SECTION 9. PARKING. If free parking is available within three (3) blocks, no reimbursement will be made. If the free parking is not available; reimbursement will be paid upon presentation of a receipt. The contractor has the option to designate a parking lot to be used within the three (3) block area. If metered parking is necessary, reimbursement will be made if the foreman can substantiate that this is a legitimate charge.

## ARTICLE VIII

SECTION 1. The minimum rate of wages for journeymen sheet metal workers, covered by this Agreement when employed in a shop or on a job within the jurisdiction of the Union to perform any work specified in Article 1 of this Agreement shall be as follows except hereinafter specified in Section 2 of this Article.

| EFFECTIVE DATE | COMMERCIAL WAGE | INDUSTRIAL WAGE |
|---|---|---|
| AUGUST 12, 2006 | $22.51 | $25.79 |
| AUGUST 12, 2007 | $1.35 INCREASE* | $1.35 INCREASE* |
| AUGUST 12, 2008 | $1.40 INCREASE* | $1.40 INCREASE* |

* Members to allocate. Contract expiration August 11, 2009

(a) Out-of-town contractors with more than one week's work within this jurisdiction will pay in cash or local check.
(b) HEAVY INDUSTRIAL WORK. Heavy industrial consists of Chemical Plants, Electric Power Plants, Garbage Disposal Plants, Petroleum Producing Facilities, Breweries, Sugar Processing Plants, Water & Sewage Treatment Plants, Satellite & Missile Facilities, Citrus Processing Plants, etc. The wage and fringe rate for Heavy Industrial work will be $ (see chart).

The rate of pay for Industrial Foremen will be 15% above Industrial Journeyman rate. Industrial General Foremen rates will be 20% above Industrial Journeyman rate.

WAGE RATES AND FRINGES FOR LOCAL 32 COMMERCIAL AND HEAVY INDUSTRIAL

| | COMMERCIAL Effective 08/12/06 | HEAVY INDUSTRIAL Effective 08/12/06 |
|---|---|---|
| Taxable Wages | $22.51 | $25.79 |
| National Pension | 1.38 | 1.38 |
| Local Pension | 3.83 | 3.83 |
| Health & Welfare | 4.44 | 4.44 |
| PAL | (.02)** | (.02)** |
| Dues Assessments | (.40)** | (.40)** |
| Work Preservation Fund | (.10)** | (.10)** |
| Equality Fund | (.10)** | (.10)** |
| Int'l Dues Assessment | (.02)** | (.02)** |
| Industry Fund | .23 | .23 |
| Local Apprentice | .28 | .28 |
| ITI | .12 | .12 |
| NEMI | .03 | .03 |
| SMOHI | .02 | .02 |
| FL State Bldg. Trades | .01 | .01 |
| | $32.85 | $36.13 |

** Deducted from taxable wage.
Local fringe benefit contributions shall not be duplicated.

SECTION 2. On all work specified in Article I of this Agreement fabricated and/or assembled by journeymen, apprentices, pre-apprentices and/or classified sheet metal workers within the jurisdiction of this Union, or elsewhere, for erection and/or installation within the jurisdiction of any other local union affiliated with Sheet Metal Workers' International Association, whose established wage scale is higher than the wage scale specified in this Agreement, the higher wage scale of the job site Union shall be paid to the employees employed on such work in the home shop or sent to the jobsite.

SECTION 3. The provision of Section 2 of this Article, Section 2 of Article II and Section I of Article III shall not be applicable to the manufacture for sale to the trade or purchase of the following items:
1. Ventilators
2. Louvers
3. Automatic and fire dampers
4. Radiator and air conditioning unit enclosures
5. Fabricated pipe and fittings for residential installations and light commercial work as defined in the locality
6. Mixing (attenuation) boxes
7. Plastic skylights
8. Air diffusers, grills, and registers
9. Sound attenuators
10. Chutes
11. Double-wall panel plenums
12. Angle rings

SECTION 4. The provisions of Section 2 of this Article shall not be applicable to AIR POLLUTION CONTROL SYSTEMS fabricated for the purpose of removing air Pollutants, excluding air conditioning, heating and ventilating

7

systems. In addition, the provisions of Section 2 of this Article will not be applicable to the manufacture of spiral pipe and fittings.

SECTION 5. Except as provided in Sections 2 and 6 of this Article, the Employer agrees that journeymen, pre-apprentice and classified sheet metal workers hired outside the territorial Jurisdiction of this Agreement shall receive the wage scale and working conditions of the local Agreement covering the territory in which such work is performed or supervised.

SECTION 6. When the Employer has any work specified in Article I of this Agreement to be performed outside of the area covered by this Agreement and within the area covered by another Agreement with another local union affiliated with the Sheet Metal Workers' International Association, and qualified sheet metal workers are available in such area, he may send no more than two (2) sheet metal workers per job into such area to perform any work which the Employer deems necessary, both of whom shall be from the Employer's home jurisdiction. All additional sheet metal workers shall come from the area in which the work is to be performed. Journeymen sheet metal workers covered by this Agreement who are sent outside of the area covered by this Agreement shall be paid at least the established minimum wage scale specified in Section I of this Article but in no case less than the established wage scale of the local Agreement covering the territory in which such work is performed or supervised, plus all necessary transportation, travel time, board and expenses while employed in that area, and the Employer shall be other-wise governed by the established working conditions of the local Agreement. If employees are sent into an area where there is no local Agreement of the Sheet Metal Workers' International Association covering the area then the minimum conditions of the home local union shall apply.

SECTION 7. In applying the provisions of Section 2, 5, and 6 of this Article VIII, the term "wage scale" shall include the value of all applicable hourly contractual benefits in addition to the hourly wage rate provided in said Sections.

SECTION 8. Welfare benefit contributions shall not be duplicated.
When sheet metal workers are employed temporarily outside the Jurisdiction of their home local union, the parties signatory to this Agreement agree to arrange through the Health and Welfare Trust Fund to transmit health and welfare contributions made on behalf of the employee to the Health and Welfare Trust Fund in the employee's home local union.
The parties to this Agreement agree to establish a system for continuing health and welfare coverage for employees working temporarily outside the jurisdiction of the local collective bargaining agreement when health and welfare contributions are transmitted on their behalf by trust funds from other areas.

SECTION 9. Wages at the established rates specified herein shall be paid weekly in the shop or on the job at or before quitting time on Wednesday of each week, and no more than three (3) days' pay will be withheld. However, employees when discharged shall be paid in full. Employers at their option may offer and employees may accept payroll through electronic or automatic deposit.

SECTION 10. Journeymen, apprentice, pre-apprentice and classified sheet metal workers who report for work by direction of the Employer, and are not placed to work, shall be entitled to two (2) hours pay at the established rate. This provision, however, shall not apply under conditions over which the Employer has no control. Employees who arrive at the employers business or to the jobsite physically unable to work, without proper clothing and tools in order to work on the day referred at the designated starting time will not receive show up pay.

SECTION 11. Each Employer covered by this Agreement shall employ at least one (1) journeyman sheet metal worker who is not a member of the firm on all work specified in Article I of this Agreement. However it will be permissible for an owner-member to be the journeyman sheet metal worker.

SECTION 12. (a). Contributions provided for in Section 12(b) of this Article will be used to promote programs of industry education, training, negotiation and administration of collective bargaining agreements, research and promotion, such programs serving to expand the market for the services of the Sheet Metal Industry, improve the technical and business skills of Employers, stabilize and improve the employment opportunities for employees. No part of any such payments, however, shall be used for any other purpose except as expressly specified above.

(b). The Employer shall pay to the Industry Fund, twenty-three cents ($.23) per hour for each hour worked on or after the effective date of this Agreement for each employee of the employer covered by this agreement. Payment shall be made weekly for transmittal through a third party administrator designated by the Local Trustees.

(c). The local industry fund shall furnish to the Business Manager of the Union, not less often than semi-annually, written reports describing in reasonable detail the nature of activities in which it is engaged or which it supports directly or indirectly with any of its funds. One time per year, the local industry fund shall include in such written report, a statement attested to by a certified public accountant and containing its balance sheet and detailed statement of receipts and disbursements. Further specific detailed information in regard to local industry fund activities or its receipts and/or disbursements shall be furnished to the Business Manager of the Union upon his written request.

(d). Grievances concerning use of local industry fund monies to which an Employer shall contribute for purposes prohibited under Section 13(a) or for violations of other subsections of this Section shall be handled under the provisions of Article X of this Agreement. The National Joint Adjustment Board shall be authorized to impose any remedial order for violation of this Section, including termination of the Employer's obligation to contribute to the local industry fund.

SECTION 13. Effective as of the date of the Agreement the Employers will contribute to the International Training Institute for the Sheet Metal and Air Conditioning Industry (ITI) twelve cents, ($0.12) per hour for each hour worked by each employee of the Employer covered by this agreement. Payment shall be made on or before the 20th day of the succeeding month and shall be remitted as designated by the Trustees of the ITI, or for purposes of collection and transmittal through a third party administrator designated by the Local Trustees.

Effective as of the date of this Agreement the Employers will contribute to the National Energy Management Institute Committee (NEMIC), a jointly administered trust fund, three cents ($0.03) per hour for each hour worked by each employee of the Employer covered by this Agreement. Payment shall be made on or before the 20th day of the succeeding month and shall be remitted as designated by the Trustees of the NEMIC, or for the purposes of collection and transmittal through a third party administrator designated by the Local Trustees. If during the term of this agreement, the SMWIA Constitution is amended to provide that participation in the National Energy Management Institute is no longer mandatory for local unions, the parties agree that the three cents ($0.03) per hour contribution presently set forth in the agreement shall be reallocated to the Local Joint Apprenticeship and Training Fund.

Effective as of the date of this Agreement the Employers will contribute to the Sheet Metal Occupational Health Institute Trust (Institute) two cents ($0.02) per hour for each hour worked by each employee of the Employer covered by this Agreement until the Institute Trustees determine that the Trust is financially self sufficient. Payment shall be made on or before the 20th day of the succeeding month and shall be remitted as designated by the Trustees of the Institute, or for purposes of collection and transmittal through a third party administrator designated by the Local Trustees.

The parties agree to be bound by the separate Agreements and Declarations of Trusts establishing the International Training Institute for The Sheet Metal and Air Conditioning Industry, the National Energy Management Institute Committee, the Sheet Metal Occupational Health Institute Trust, and the Industry Fund of the United States and the separate agreements and declarations of trusts of all other local or national programs to which it has been agreed that contributions will be made. In addition, the parties agree to be bound by any amendments to said trust agreements as may be made from time to time and hereby designate as their representatives on the Board of Trustees such trustees as are named together with any successors who may be appointed pursuant to said agreements.

The parties authorize the trustees of all national funds to cooperatively establish uniform collection procedures to provide for efficient and effective operation of the various national trusts.

SECTION 14. In the event that the employer becomes delinquent in making contributions to any national or local fund, the Union may withdraw all employees from the service of the Employer within seven days notice of such delinquency by

the trustees. The withdrawal of such employees from the service of the employer shall not constitute a violation of any provision of this agreement.

## SECTION 15. PROVISIONS APPLICABLE TO FRINGE BENEFIT CONTRIBUTIONS

### (a) JOINT TRUST FUNDS

The Sheet Metal Workers Local 32 Health and Welfare Fund, the Sheet Metal Workers Local 32 Pension Fund, the Sheet Metal Workers Local 32 Apprenticeship and Training Fund, the National Pension Fund, ITI, NEMI and SMOHI are jointly managed Taft-Hartley Trust Funds established and maintained pursuant to Agreements and Declarations of Trust. All Employers who are party to or otherwise bound by this agreement acknowledge, accept and agree to be bound by the Agreements and Declarations of Trust of the various Funds as set forth within this agreement. All Employers acknowledge, accept and appoint the current Employer Trustees of the various Funds to act on their behalf and to accept future Trustees who are appointed or elected in accordance with the Trust documents.

### (b). PAYMENT AND REPORTING

1. Contributions shall be paid weekly for all hours worked by employees. Contribution reports and payment are due within ten (10) calendar days immediately following the end of the payroll week for which such contributions are due.

2. The Employer agrees to accompany the fringe benefit contributions with a weekly uniform reporting form prepared by the Trustees, showing the name and social security number of each employee, the hours worked, the amount of the contributions paid and such other pertinent information as may be requested by the Trustees. In the event the Employer has no payment to forward, the Employer shall indicate that fact in the appropriate space on the reporting form.

### (c). DELINQUENT PAYMENTS - AUDIT

1. An Employer shall be considered delinquent if contributions in full are not received by the respective funds or the escrow agent within ten (10) days from the close of the weekly payroll period for which the contributions are owed. Each delinquent Employer shall pay as liquidated damages the sum of 10 percent (10%) of all amounts due or ten dollars ($ 10.00) whichever is greater and no further contributions will be accepted until this obligation has been met. Additionally, each delinquent Employer shall pay to the Funds involved on unpaid contributions, interest at the rate of one and one half percent (1-1/2%) per month on the unpaid balance of any contributions owed to the Trust Funds.

2. The Trustees of any of the funds shall have the right at any time to audit the records of any Employer to determine whether full or timely payments have been made. The Employer agrees to permit a certified public accountant, or a member of the firm or staff selected by the Trustees, to enter upon the Employer's premises during normal working hours to examine such of the records as may be required to determine whether full and timely payments have been made. If such an audit shows a delinquency or deficiency in payments, the Employer shall pay the costs of the audit.

3. The Trustees of the Funds may instruct legal counsel to institute legal action to enforce collection of delinquent payments. A delinquent Employer shall pay all reasonable attorneys' fees, court costs and other expenses incurred in the enforcement of the audit or collection provisions as set forth in this agreement and liquidated damages and interest as provided by law.

4. A delinquent Employer shall be liable to any employees affected by such delinquency for a sum equal to the value of the benefits lost to the employee by reason of the delinquency of such Employer. A delinquent Employer shall be liable to reimburse any fund for the cost or value of any benefits which may be made available by the Trustees to any employee affected by the failure of the delinquent Employer to contribute or to report to the Fund.

(d). BONDING

The Trustees of the Trust Funds shall require all employers who employ zero to five (0-5) employees to post a $5,000.00 surety bond, cash or other security. Employers who employ more than five (5) employees shall be required to post a $15,000.00 surety bond, cash or other security.

SECTION 16. The Union agrees to furnish weekly to the Health and Welfare Trustees, the names of all Employers to which it furnished men, whether under the terms of this Agreement or otherwise.

SECTION 17. The Union will notify the Association in writing whenever a new contractor enters into an Agreement with Local 32.

SECTION 18. Check-off Each Employer who is a party to this Agreement agrees to recognize signed check-off authorizations executed by any of his employees who are covered by this Agreement and to deduct from the wages of the employees those sums which are uniformly charged to the membership of the Union or employees represented by the Union, initiation fees, dues, assessments or charges. Such authorizations, in order to be valid, shall comply with all Federal and State laws. The deduction shall be made only for those times which the Union notifies the Employer to deduct and in the amount or amounts which the Union instructs the Employers to deduct. Remittances of such deductions shall be made at the same time and to the same agent to whom remittances to the fringe benefit programs are made in accordance with this Agreement.

SECTION 19. If any of the checks received by employees as wages shall not be honored through the fault of the Employer, all further wages paid by him shall be paid in cash.

SECTION 20. The Employer agrees to place the following data on all payroll check vouchers or pay envelopes furnished to journeymen, apprentices, pre apprentices, and classified workers:

(1) Name of employee                Deductions:
(2) Payroll period ending           (1) F.I.C.A.
(3) Regular hours                   (2) Income Tax
(4) Overtime hours                  (3) Other
(5) Total earnings                  (4) PAL (Political Action League)
(6) Net earnings

SECTION 21. If an employee has not received his paycheck by quitting time on payday the employee shall receive $100.00 in addition to his weekly pay.

SECTION 22. A job applicant shall be rejected only at the job site, or the Employer's place of business.

## ARTICLE IX

SECTION 1. Journeymen, apprentice, pre-apprentice and classified sheet metal workers covered by this Agreement shall provide for themselves all necessary hand tools as per the attached tool list

<u>SECTION 2</u> Tool List.

| TOOL | JOURNEYMAN | APPRENTICES | | PRE | CLASS. |
|---|---|---|---|---|---|
| | | 3RD AND 4TH YEAR | 1ST AND 2ND YEAR | | |
| RH AVIATION SNIPS | ● | ● | ● | ● | ● |
| SHT METAL HAMMER | ● | ● | ● | ● | ● |
| BULL SNIPS | ● | ● | | | ● |
| TONGS | ● | ● | | | ● |
| TRI-SQUARE | ● | ● | | | ● |
| TAPE MEASURE | ● | ● | ● | ● | ● |
| SCRATCH AWL | ● | ● | ● | | ● |
| PLUMB BOB | ● | ● | | | ● |
| STRAIGHT VICE GRIP | ● | ● | ● | | ● |
| END WRENCHES | ● | ● | | | ● |
| TOOL POUCH | ● | ● | ● | | ● |
| LH AVIATION SNIPS | ● | ● | ● | ● | ● |
| WHITNEY PUNCH | ● | ● | | | ● |
| DIVIDERS | ● | ● | ● | | ● |
| KNIFE | ● | ● | ● | | ● |
| SCREW DRIVERS | ● | ● | ● | ● | ● |
| HACK SAW | ● | ● | | | ● |
| CHALK BOX | ● | ● | | | ● |
| 12" ADJ. WRENCH | ● | ● | | | ● |
| DRIFT PIN | ● | ● | ● | ● | ● |
| TORPEDO LEVEL | ● | ● | | | ● |
| C-CLAMP VICE GRIPS | ● | ● | | | ● |
| 3/8" SOCKET SET | ● | ● | | | ● |
| SIDE CUTTERS | ● | ● | | | ● |

SECTION 3. Journeymen, apprentice, pre-apprentice and classified sheet metal workers covered by this Agreement shall not be permitted or required as a condition of employment to furnish the use of automobile or other conveyance to transport men, tools, equipment or materials from shop to job, from job to job, or from job to shop; facilities for such transportation to be provided by the Employer. This provision shall not restrict the use of an automobile or other conveyance to transport its owner and personal tools from home to shop or job at starting time or from shop or job to home at quitting time.

SECTION 4. All power equipment, twist drills, hacksaw blades, panduit guns and powder actuated tools shall be furnished by the Employer.

SECTION 5. All safety equipment in conformance with the requirements of state and federal laws and regulations shall be furnished by the employer, such as, but not limited to fall protection devices, safety goggles or glasses, welding lenses, hoods, sleeves and gloves, however, safety items such as shoes, prescription glasses, hard hats and regular work clothes shall be provided by the employee.

SECTION 6. The employer shall provide or see that there is provided a convenient and sanitary supply of iced drinking water and sanitary cups or fountains.

SECTION 7. The Employer will permanently identify company vehicles which are used to transport equipment and/or materials in accordance with local laws.

**ARTICLE X**

The Union and the Employer, whether party to this Agreement independently or as member of a multi-employer bargaining unit, agree to utilize and be bound by this Article.

SECTION 1. Grievances of the Employer or the Union, arising out of interpretation or enforcement of this Agreement, shall be settled between the Employer directly involved and the duly authorized representative of the Union, if possible. Both parties may participate in conferences through representatives of their choice.

To be valid, grievances must be raised within thirty (30) calendar days following the occurrence giving rise to the grievance, or, if the occurrence was not ascertainable, within thirty (30) calendar days of the first knowledge of the facts giving rise to the grievance.

SECTION 2. Grievances not settled as provided in Section 1 of this Article may be appealed by either party to the Local Joint Adjustment Board where the work was performed or in the jurisdiction of the Employer's home local and such Board shall meet promptly on a date mutually agreeable to the members of the Board, but in no case more than fourteen (14) calendar days following the request for its services, unless the time is extended by mutual agreement of the parties or Local Joint Adjustment Board. The Board shall consist of representatives of the Union and of the local Employers' Association and both sides shall cast an equal number of votes at each meeting. The local Employers' Association, on its own initiative, may submit grievances for determination by the Board as provided in this Section. Except in the case of a deadlock, a decision of a Local Joint Adjustment Board shall be final and binding.

Notice of appeal to the Local Joint Adjustment Board shall be given within thirty (30) days after termination of the procedures prescribed in Section 1 of this Article, unless the time is extended by a mutual agreement of the parties.

SECTION 3. Grievances not disposed of under the procedure prescribed in Section 2 of this Article, because of a deadlock or failure of such Board to act, may be appealed jointly or by either party to a Panel, consisting of one (1) representative appointed by the Labor Co-Chairman of the National Joint Adjustment Board and one (1) representative appointed by the Management Co-Chairman of the National Joint Adjustment Board. Appeals shall be mailed to the

National Joint Adjustment Board. Notice of appeal to the Panel shall be given within thirty (30) days after termination of the procedures prescribed in Section 2 of this Article. Such Panel shall meet promptly but in no event more than fourteen (14) calendar days following receipt of such appeal, unless such time is extended by mutual agreement of the Panel members. Except in case of deadlock, the decision of the Panel shall be final and binding.

In establishing the grievance procedure of the Standard Form of Union Agreement, it was the intent of Sheet Metal Workers' International Association and the Sheet Metal and Air Conditioning Contractors' National Association, Inc. to establish a method for resolving grievances permitting appeals for out-of-area Employers from the grievance arbitration procedures established for the territory in which the work is performed. An Employer who is not a party to the Labor Agreement of the area in which the work in dispute is performed may appeal the decision to the Local Joint Adjustment Board from that area, including a unanimous decision, as well as a decision of any alternative arbitration tribunal established for that area, and request a Panel hearing as set forth in Section 3 of this Article, providing such appeal is approved by the Co-Chairman of the National Joint Adjustment Board. Such a right of appeal shall exist despite any contrary provision in the agreement covering the area in which the work is performed.

For the purposes of this Section, an employer who is a party to the Labor Agreement of the area in which the work in dispute is performed, but has no permanent shop in the area served by the Local Joint Adjustment board that rendered the unanimous decision, shall also be entitled to appeal a deadlocked or unanimous Local Joint Adjustment Board decision, and request a Panel hearing.

SECTION 4. Grievances not settled as provided in Section 3 of this Article may be appealed jointly or by either party to the National Joint Adjustment Board. Submissions shall be made and decisions rendered under such procedures as may be prescribed by such Board. Appeals to the National Joint Adjustment Board shall be submitted within thirty (30) days after termination of the procedures described in Section 3 of this Article. The Procedural Rules of the National Joint Adjustment Board are incorporated in this Agreement as though set out in their entirety. (Copies of the procedures may be obtained from the National Joint Adjustment Board.*)

SECTION 5. A Local Joint Adjustment Board, Panel and the National Joint Adjustment Board are empowered to render such decisions and grant such relief to either party as they deem necessary and proper including awards of damages or other compensation.

SECTION 6.   In the event of non-compliance within thirty (30) calendar days following the mailing of a decision of a Local Joint Adjustment Board, Panel or the National Joint Adjustment Board, a local party may enforce the award by any means including proceedings in a court of competent jurisdiction in accord with applicable state and federal law.   If the party seeking to enforce the award prevails in litigation, such party shall be entitled to its costs and attorney's fees in addition to such other relief as is directed by the courts. Any party that unsuccessfully challenges the validity of an award in a legal proceeding shall also be liable for the costs and attorney's fees of the opposing parties in the legal proceedings.

---

*All correspondence to the National Joint Adjustment Board shall be sent to the following address:
National Joint Adjustment Board, PO Box 220956, Chantilly, VA  20153-0956,
or 4201 Lafayette Center Drive, Chantilly, VA.  20151-1209.

---

SECTION 7.   Failure to exercise the right of appeal at any step thereof within the time limit provided therefore shall void any right of appeal applicable to the facts and remedies of the grievances involved.   There shall be no cessation of work by strike or lockout during the pendency of the procedures provided from this Article. Except in the case of deadlock, the decision of the National Joint Adjustment Board shall be final and binding.

SECTION 8.   In addition to the settlement of grievances arising out of interpretation or enforcement of this Agreement as set forth in the preceding sections of this Article, any controversy or dispute arising out of the failure of the parties to negotiate a renewal of this agreement shall be settled as hereinafter provided:

(a) Should the negotiations for a renewal of this Agreement or negotiations regarding a wage/fringe re-opener become deadlocked in the opinion of the Union representative ('s) or of the employer ('s) representative ('s) or both, notice to that effect shall be given to the National Joint Adjustment Board.

If the Co-Chairman of the National Joint Adjustment Board believe the dispute might be adjusted without going to final hearing before the National Joint Adjustment Board, each will then designate a Panel representative who shall proceed to the locale where the dispute exists as soon as convenient, attempt to conciliate the differences between the parties and bring about a mutually acceptable agreement. If such Panel representatives or either of them conclude that they cannot resolve the dispute, the parties thereto and the Co-chairman of the National Joint Adjustment Board shall be promptly so notified without recommendation from the Panel representatives. Should the Co-Chairman of the National Joint Adjustment Board fail or decline to appoint a Panel member or should notice of failure of the Panel representatives to resolve the dispute be given, the parties shall promptly be notified so that either party may submit the dispute to the National Joint Adjustment Board.

In addition to the mediation procedure set forth above or as an alternate thereto, the Co-Chairman of the National Joint Adjustment Board may each designate a member to serve as a Subcommittee and hear the dispute in the local area. Such Subcommittees shall function as arbitrators and are authorized to resolve all or part of the issues. They are not, however, authorized to deadlock and the matter shall be heard by the National Joint Adjustment Board in the event a Subcommittee is unable to direct an entire resolution of the dispute.

The dispute shall be submitted to the National Joint Adjustment Board pursuant to the rules as established and modified from time to time by the National Joint Adjustment Board. The unanimous decision of said Board shall be final and binding upon the parties, reduced to writing, signed and mailed to the parties as soon as possible after the decision has been reached. There shall be no cessation of work by strike or lockout unless and until said Board fails to reach a unanimous decision and the parties have received written notification of its failure.

(b) Any application to the National Joint Adjustment Board shall be upon forms prepared for that purpose subject to any changes which may be decided by the Board from time to time. The representatives of the parties who appear at the hearing will be given the opportunity to present oral argument and to answer any questions raised by members of the Board. Any briefs filed by either party including copies of pertinent exhibits shall also be exchanged between the parties and filed with the National Joint Adjustment Board at least twenty-four (24) hours in advance of the hearing.

(c) The National Joint Adjustment Board shall have the right to establish time limits which must be met with respect to each and every step or procedure contained in this Section. In addition, the Co-Chairman of the National Joint Adjustment Board shall have the right to designate time limits which will be applicable to any particular case and any step therein which may be communicated to the parties by mail, facsimile or telephone notification.

(d) Unless a different date is agreed upon mutually between the parties or is directed by the unanimous decision of the National Joint Adjustment Board, all effective dates in the new agreement shall be retroactive to the date immediately following the expiration date of the expiring agreement.

SECTION 9. In administering dispute resolution activities under the arbitration procedures of the Standard Form of Union Agreement, the National Adjustment Board, the Sheet Metal Workers' International Association, the Sheet Metal and Air Conditioning Contractors' National Association, Inc. and their representatives, are functioning as arbitrators and not as the representatives of any entity that is party to such dispute. Therefore, they shall enjoy all the rights, privileges, and immunities afforded to arbitrators under applicable law.

## ARTICLE XI

SECTION 1. All duly qualified apprentices shall be under the supervision and control of a Joint Apprenticeship and Training Committee composed of six (6) members, three (3) of whom shall be selected by the Employer, and three (3) by the Union. Said Joint Apprenticeship and Training Committee shall formulate and make operative such rules and

regulations as they may deem necessary and which do not conflict with the specific terms of this Agreement, to govern eligibility, registration, education, transfer, wages, hours, working conditions of duly qualified apprentices and the operation of an adequate apprentice system to meet the needs and requirements of the trade. Said rules and regulations when formulated and adopted by the parties hereto shall be recognized as part of this Agreement.

SECTION 2. The Joint Apprenticeship and Training Committee designated herein shall serve for the life of this Agreement, except that vacancies in said Joint Apprenticeship and Training Committee caused by resignation or otherwise, may be filled by either party hereto, and it is hereby mutually agreed by both parties hereto, that they will individually and collectively cooperate to the extent that duly qualified apprentices be given every opportunity to secure proper technical and practical education experience in the trade, under the supervision of the Joint Apprenticeship and Training Committee. The parties will review through the Joint Labor Management Committee the needs for specialized skills upgrade training and cooperate to establish necessary programs which will then be supervised by the Joint Apprenticeship and Training Committee. Journeymen who successfully complete eight hours of continuing education per year will receive a bonus of $100.00 from the JATC.

SECTION 3. It is the understanding of the parties to this Agreement that the funds contributed by signatory Employers to the International Training Institute and any Local Joint Apprenticeship and Training Fund (Local JATC) will not be used to train apprentices or journeymen who will be employed by employers in the Sheet Metal Industry not signatory to a collective bargaining agreement providing for contributions to the International Training Institute and a Local JATC. Therefore, the trustees of the International Training Institute and Local JATC shall adopt and implement a Scholarship Loan Agreement Program which will require apprentices and journeymen employed by signatory Employers to repay the cost of training either by service following training within the union sector of the industry or by actual repayment of the cost of training if the individual goes to work for a non-signatory Employer in the Sheet Metal Industry. The cost of training shall include the reasonable value of all International Training Institute and Local JATC materials, facilities and personnel utilized in training. If a Local JATC does not implement the Scholarship Loan Agreement, the Local JATC shall be prohibited from utilizing International Training Institute materials and programs.

SECTION 4. It is hereby agreed that the Employer shall apply to the Joint Apprenticeship and Training Committee and the Joint Apprenticeship and Training Committee shall grant apprentices on the basis of one (1) apprentice for each three (3) journeymen regularly employed throughout the year. Provided, however, an Employer will not be entitled to a new apprentice if the Employer has an apprentice on layoff for lack of work.
Not withstanding the above a Market Growth Ratio for installing contractors only has been established as follows; 3 journeyman, 3 apprentices, and 3 others (Classified workers or Pre-Apprentices). This ratio counts all employees in a company not those in a specific crew. These ratios will expire with the expiration of the agreement unless a 15% per year increase in man hours is realized during the term of this agreement.

SECTION 5. All applicants for apprenticeship shall be 18 years and older and each apprentice shall serve an apprenticeship of four (4) years and such apprentices shall not be in charge of work on any job and shall work under the supervision of a journeyman until apprenticeship terms have been completed and they have qualified as journeymen. Fourth year apprentices may work independently in a manner which does not conflict with the SMWIA constitution.
`

SECTION 6. A graduated wage scale for apprentices shall be established and maintained on a percentage basis of the established wage rate of journeyman sheet metal workers.
Apprentice wages will be as follows: Based on journeyman's wage of $22.51 effective August 12, 2006

| | | | | | |
|---|---|---|---|---|---|
| 1/1 | 50% of journeyman wage | $11.26 | 3/1: | 70% of journeyman wage | $15.76 |
| 1/2 | 55% of journeyman wage | $12.38 | 3/2: | 75% of journeyman wage | $16.88 |
| 2/1 | 60% of journeyman wage | $13.51 | 4/1: | 80% of journeyman wage | $18.01 |
| 2/2 | 65% of journeyman wage | $14.63 | 4/4: | 85% of journeyman wage | $19.13 |

16

**Fringes for apprentices are as follows, effective August 12, 2006**

Contributions for Apprentices to the Local Pension fund shall be made on a 50%-85% of the Journeyman's Local Pension contribution. Contributions for Apprentices to the National Pension Fund shall be made on a 50%-85% of the Journeyman's National Pension Fund contribution.

National Pension contribution based on $1.38 Journeyman contribution rate effective August 12, 2006

| 1/1 | 1/2 | 2/1 | 2/2 | 3/1 | 3/2 | 4/1 | 4/2 |
|------|------|------|------|------|------|------|------|
| $0.69 | $0.76 | $0.83 | $0.90 | $0.97 | $1.04 | $1.10 | $1.17 |

Local Pension contribution rate based on $3.83 Journeyman contribution rate effective August 12, 2006

| 1/1 | 1/2 | 2/1 | 2/2 | 3/1 | 3/2 | 4/1 | 4/2 |
|------|------|------|------|------|------|------|------|
| $1. 92 | $2.11 | $2.30 | $2.49 | $2.68 | $2.87 | $3.06 | $3.26 |

| | | | |
|---|---|---|---|
| Health & Welfare | $4.44 | ITI | .12 |
| PAL | (.02) ** | NEMI | .03 |
| Work Preservation Fund | (.10) ** | SMOHI | .02 |
| Equality Fund | (.05) ** | Fl State Bldg. Trades | .01 |
| Int'l Dues Assessment | (.02) ** | Local JATC | .28 |
| Industry Fund | .23 | | |

SECTION 7. The parties recognize that previous experience in the industry can be considered when evaluating and placing Sheet Metal Workers into the Apprenticeship program and the JATC shall work cooperatively with the parties in establishing standards for placing employees into the program. Continuity in health care shall be established by the newly organized worker who has health care coverage by making COBRA payments to his previous employer until he has met the eligibility requirements to be covered under the Local #32 Health Plan. For newly organized workers who have no health insurance, no health care coverage will be offered until he has met the eligibility requirements of The Local Health Plan. It is understood that the Employer will not be making COBRA payments on newly organized employees.

SECTION 8. The parties agree that career-long skill upgrade training is necessary for an effective workforce and agree to undertake those measures available to them to encourage continued training for Sheet Metal Journeyman.

SECTION 9. The Employer must be able to provide a well-rounded education, both in the field and in the shop in order to be entitled to apply for apprentices.

SECTION 10. Apprentices to receive wage increases at six month intervals at the direction of the JATC.

SECTION 11. All sheet metal apprentices may be rotated from shop to shop every six (6) months at the discretion of the Joint Apprentice Committee.

**ARTICLE XII**

SECTION 1. It is hereby agreed that the Employer may apply to the Joint Apprenticeship and Training Committee and the Joint Apprenticeship and Training Committee shall grant pre-apprentices on the basis of the Market Share Growth ratio for installing contractors only: 3 Journeyman, 3 Apprentices, 3 Others (Pre-Apprentices or Classified workers). This ratio counts all employees in a company not in a specific crew. This ratio will expire with the expiration of this agreement unless a 15% per year increase in the man hours is realized during the term of this agreement.

Any apprentice of the Employer on layoff at the effective date of this Agreement must be rehired before said Employer is entitled to any pre-apprentice. Thereafter, the same conditions and ratios shall apply.

In the event the Employer is entitled to employ a pre-apprentice and the Union fails to comply with the Employer's written request to furnish a pre-apprentice within forty-eight (48) hours, the Employer may hire such employees and refer them to the Joint Apprenticeship and Training Committee for enrollment.

Pre-apprentices shall be enrolled as applicants for future openings in the apprenticeship program. The Joint Apprenticeship and Training Committee shall evaluate the qualifications of pre-apprentices for such openings during the first year of employment. No pre-apprentice shall be retained beyond one (1) year unless he has been found to be qualified as an applicant.

The wage scale for pre-apprentices shall be 45% of the applicable Journeyman's wage scale per hour. Employer contributions to the Medical Fund and the National Pension Fund on behalf of the Pre-Apprentice shall commence after completing a (90) ninety calendar day probationary period. No other benefits will be applicable during Pre-Apprenticeship. The administrator of the Health Fund shall establish a contribution level for single coverage for the Pre-Apprentice.

Benefits for Pre-apprentices effective 8/12/2006
Health&Welfare single coverage contribution rate $2.70 per hour.
National Pension Fund contribution $0.12 per hour

SECTION 2. It is mutually agreed that the Employer will notify the Union when a pre-apprentice is laid off or quits employment with the Employer through a notice of termination.

## ARTICLE XIII

SECTION 1.  Classified workers may be employed in the following ratio: Market Share Growth Ratio for installing contractors: 3 Journeyman, 3 Apprentices, 3 Others (Classified Workers or Pre-Apprentices). This ratio counts all Employees in a company not those in a specific crew. This ratio will expire with the expiration of this agreement unless a 15% per year increase in man hours is realized during the term of this agreement.

The wage rate for Classified Workers will be negotiable with the employer, but will in no case be less than 45% of minimum journeyman wage rate with future increases yearly at the same percentage rate. Coverage under the local Health and Welfare Fund will be provided. As of August 12, 2006 contributions to the National Pension shall be at $.40 per hour. Contributions to maintain benefit levels for the Health and Welfare and the National Pension Fund will be increased as required by direction of the trustees of the Funds.

Classified Workers may perform any work covered by Article I of which they are capable and will work under the general direction of a journeyman.

In the event the Employer is entitled to employ a Classified Worker and the Union fails to comply with the Employer's written request to furnish a classified worker within forty-eight (48) hours, the Employer may directly hire such employees, and refer them to the Union.

## ARTICLE XIV

SECTION 1. This Agreement, Articles I through XVI plus additional addenda one through four attached hereto shall become effective on the 12th day of August, 2006 and remain in full force and effect until the 11th day of August, 2009, and shall continue in force and effect from year to year thereafter unless written notice of reopening is given not less than ninety (90) days prior to the expiration date. In the event such notice of reopening is served, this Agreement shall

18

continue in force and effect until conferences relating thereto have been terminated by either party by written notice, provided however, that, if this Agreement contains Article X, Section 8, it shall continue in full force and effect until modified by order of the National Joint Adjustment Board or until the procedures under Article X, Section 8 have been otherwise completed. Both parties agree to meet within the first week of the ninety (90) days prior to the expiration of this agreement.

SECTION 2. If pursuant to federal or state law, any provision of this Agreement shall be found by a court of competent jurisdiction to be void or unenforceable, all of the other provisions of this Agreement shall remain in full force and effect. The parties agree to meet and negotiate a substitute provision.

SECTION 3. Notwithstanding any other provision of this Article, or any other Article of this Agreement, whenever an amendment to the Standard Form of Union Agreement shall be adopted by the sponsoring national associations, any party to this Agreement, upon the service of notice to all other parties hereto, shall have this Agreement reopened thirty (30) days thereafter, for the sole and only purpose of attempting to negotiate such amendment or amendments into this Agreement for the duration of the term hereof. There shall be no strike or lockout over this issue.

SECTION 4. Each Employer hereby waives any right it may have to repudiate this Agreement during the term of this Agreement or during the term of any extension, modification or amendment to this Agreement.

SECTION 5. By execution of this Agreement the Employer authorizes Florida SMACNA, Inc. to act as its collective bargaining representative for all matters relating to this Agreement. The parties agree that the Employer will hereafter be a member of the multi-employer bargaining unit represented by said Association unless this authorization is withdrawn by written notice to the Association and the Union at least one hundred and fifty (150) days prior to the then current expiration date of this agreement.

## ARTICLE XV

SMACNA and SMWIA are committed to promoting productive and cooperative labor management relations. Florida SMACNA, Inc. and Sheet Metal Workers' Local 32 agree to establish a labor-management committee which shall meet on a regular basis, but not less often than quarterly, to discuss industry issues of mutual concern. This committee will strive to improve communications, understand and respond to industry direction and trends, and resolve common issues collaboratively.

## ARTICLE XVI

In applying the terms of this agreement, and in fulfilling their obligations thereunder, neither the employer nor the union will discriminate in any matter prohibited by law.

## ADDITIONAL ADDENDA

### ADDENDUM NO. 1

Agreements, national in scope, between Sheet Metal Workers' International Association and other International Unions covering work jurisdiction and the assignment, allocation and division of work among employees represented for the purpose of collective bargaining by such labor organizations, shall be respected and applied by the Employer, provided such Agreements have been consummated with the knowledge and without objection from Sheet Metal and Air Conditioning Contractors' National Association, Inc.

### ADDENDUM NO. 2

Owners and partners of a Partnership or Company and President or First Vice President who are registered with the State of Florida as being officers of that corporation who become directly or indirectly financially interested or involved in the

management of a sheet metal shop or business, agree that no more than one person connected or associated with the management of the sheet metal shop business in which they are interested will work with the tools of the trade, and then in the shop only.

## ADDENDUM NO. 3

SECTION 1. Florida SMACNA, Inc. recognizes and agrees that the Union is and shall be the sole and exclusive bargaining agent for and on behalf of all sheet metal workers who are in the employ of any Employer who has designated Florida SMACNA, Inc. as its bargaining representative.

SECTION 2. In the event that any employer executing this Agreement causes another firm, or organization, or corporation to be organized to engage in work covered by this Agreement and thereafter the Employers representative who handles labor relations is also in charge of labor relations in the new firm, organization, or corporation, then the said new firm organization, or corporation shall also be bound by the provisions of this Agreement.

SECTION 3. Integrity Clause
(a) A "bad-faith Employer" for purposes of this agreement is an Employer that itself, or through a person or persons subject to an owner's control, has ownership interests (other than a noncontrolling interest in a corporation whose stock is publicly traded) in any business entity that engages in work with the scope of SFUA Article I hereinabove using employees whose wage package hours and working conditions are inferior to those prescribed in this Agreement or, if such business entity is located or operating in another, inferior to those prescribed in the agreement of the sister local union affiliated with Sheet Metal Workers' International Association, AFL-CIO in that area. An Employer is also a "bad-faith Employer" when it is owned by another business entity as its direct subsidiary or as a subsidiary of any other subsidiary within the corporate structure thereof through a parent-subsidiary and/or holding company relationship, and any other business entity within such corporate structure is engaging in work within the scope of SFUA Article I hereinabove using employees, whose wage package, hours, and working conditions are inferior to those prescribed in this Agreement or, if such other business entity is located or operating in another area, inferior to those prescribed in the agreement of sister local union affiliated with Sheet Metal Workers' International Association, AFL-CIO to in that area.
(b) Any Employer that signs this Agreement or is covered thereby by virtue of being a member of a multi-employer bargaining unit expressly represents to the union that it is not a "bad-faith Employer" as such term is defined in Section (a) hereinabove and, further, agrees to advise the union promptly if at any time during the life of this Agreement said Employer changes its mode of operation and becomes a "bad-faith Employer". Failure to give timely notice of being, or becoming a "bad-faith Employer" shall be viewed as fraudulent conduct on the part of such Employer.

In the event any Employer signatory to or bound by this Agreement shall be guilty of fraudulent conduct as defined above, such Employer shall be liable to the union for liquidated damages at the rate of $500 per calendar year day from the date of failure to notify the union until the date on which the Employer gives notice to the union. The claim for liquidated damages shall be processed as a grievance with, and within the time limits prescribed by the provisions of SFUA Article X.

SECTION 4. Any covered Employer as defined above that works on a project covered by a project agreement with the Union and other Building Trades Union, which provides for continuous work without strikes or stoppages during the life of that project, and/or the terms of this Agreement, shall not constitute a more favorable term and condition given to that covered Employer.

## ADDENDUM NO. 4

SUBSTANCE ABUSE POLICY

SECTION 1. Contractors wishing to establish a drug free work place or implement a Substance Abuse Policy will adopt the program as outlined in this Agreement. A more detailed document is available from Local 32 or Florida SMACNA ,

Inc. If a contractor has elected to establish a program, all persons within that company will be subject to testing whether covered by this Agreement or not.

SECTION 2. If from time to time it becomes necessary to change testing lab, Medical Review Officer, testing programs management contractor, or employee assistance program, this will be mutually agreed by Labor and Management within the guidelines of the policy. This program will be modified from time to time to comply with the State and Federal laws.

SECTION 3. All persons passing the test will have their results forwarded to the drug testing program management contractor, who will issue a card to the applicant indicating that they have successfully passed their test on the date indicated. Their names will be entered into a computer for the purpose of random testing. Testing laboratories will be as approved by Local 32 and Florida SMACNA, Inc.

SECTION 4. The cost of testing and drug testing programs management will be the responsibility of the Employer.

SECTION 5. All pricing by above providers must be reasonable and customary or Local 32 and Florida SMACNA, Inc. will select a new provider.

SECTION 6. For those companies who choose to drug test, the Union agrees to send the referred employee directly to the drug testing facility of the company's choice for testing. The referred employee will not go to work until a negative result is obtained. If the employee passes the test he would then go to work and be paid two (2) hours for his time spent taking the drug test. If the employee fails the drug test, he would be notified by the Employer's Medical Review Officer and would return to the Union hall. The employer has no obligation to pay the Employee for a positive test result.

In witness whereof, the parties hereto affix their signatures and seal this _____
Day of _____, Year _____

THIS STANDARD FORM OF UNION AGREEMENT HAS PROVIDED FOR THE INCLUSION OF PRE-APPRENTICES AND A

REDUCTION OF THE WAGE SCHEDULE FOR NEW APPRENTICES. THE PURPOSE OF THIS IS TO MAKE

CONTRACTORS MORE COMPETITIVE WITH NON-UNION COMPETITION. TO ACHIEVE THAT OBJECTIVE

EMPLOYERS AGREE TO MINIMIZE MULTIPLE MARKUPS.


Florida SMACNA, Inc.

Local Union No. 32
Of Sheet Metal Workers' International Association

By:_____
William Marvel, Chairman of Labor Committee

_____
Larry W. Stewart, Business Manager


Or


_____
(Name of firm)


_____
(Signature and title of officer or representative)

# REQUEST FOR MANPOWER

**FROM:** _____  **DATE:** _____

**TO: LOCAL UNION BUSINESS REPRESENTATIVE OR MANAGER**

**JOBSITE:** _____

**MAP ATTACHED:** _____ **YES** _____ **NO**

**WORK SCHEDULE:** □ **5-8's** □ **4-10's M-TH** □**1**$^{ST}$ **SHIFT**
□**O.T.+** □**4-10's T-F** □**2**$^{ND}$ **SHIFT**
□**O.T. SAT.** □**O.T. SUN.** □**3**$^{RD}$ **SHIFT**

**PROJECT DURATION:**                    **STARTING TIME:**

**JOB START DATE:**                    **CONTACT PERSON:**

**OTHER, EXPLAIN:**

### (WORK SCHEDULES SUBJECT TO CHANGE)

**PLEASE SEND THE FOLLOWING MANPOWER TO**_____
<span style="font-size:smaller">(address)</span>

**BY** _____ **TO EXECUTE PAPERWORK.**
<span style="font-size:smaller">(date)</span>

**JOURNEYMAN**          □          **DATE FILLED** _____

**APPRENTICE**          □          **DATE FILLED** _____

**PRE-APPRENTICE**          □          **DATE FILLED**_____

**CLASSIFIED WORKER**          □          **DATE FILLED** _____

JS 44 (Rev. 11/05)

# CIVIL COVER SHEET

07 – 21433

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)   **NOTICE: Attorneys MUST Indicate All Re-filed Cases Below.**

## I. (a) PLAINTIFFS

LARRY STEWART, DAVID PUITTINEN, RICK MAHONEY, et al.,

## DEFENDANTS

INDUSTRIAL MECHANICAL SYSTEMS, LLC

CIV-LENARD
TORRES

**(b)** County of Residence of First Listed Plaintiff   Miami-Dade
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

D. Marcus Braswell, Esq., Sugarman & Susskind, P.A.
100 Miracle Mile, Suite 300, Coral Gables, FL 33134
Tel. (305) 529-2801 --- Fax (305) 447-8115

Attorneys (If Known)

FILED by ___
JUN 0 4 2007

MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

**(d)** Check County Where Action Arose: ✓ MIAMI- DADE  ☐ MONROE  ☐ BROWARD  ☐ PALM BEACH  ☐ MARTIN  ☐ ST. LUCIE  ☐ INDIAN RIVER  ☐ OKEECHOBEE HIGHLANDS

Dade /07 – 21433 -Cv-Lenard /Torres

## II. BASIS OF JURISDICTION   (Place an "X" in One Box Only)

☐ 1  U.S. Government Plaintiff

✓ 3  Federal Question (U.S. Government Not a Party)

☐ 2  U.S. Government Defendant

☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT   (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt. Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ✗ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

## V. ORIGIN   (Place an "X" in One Box Only)

✓ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Re-filed- (see VI below)   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify)   ☐ 6 Multidistrict Litigation   ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. RELATED/RE-FILED CASE(S).
(See instructions second page):

a) Re-filed Case ☐ YES ✓ NO   b) Related Cases ☐ YES ☐ NO

JUDGE   DOCKET NUMBER

## VII. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause (**Do not cite jurisdictional statutes unless diversity**):

This is an action for collection of delinquent fringe benefit contributions pursuant to 29 USC, Sections 1132 and 1145.

LENGTH OF TRIAL via  1-2  days estimated (for both sides to try entire case)

## VIII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ✓ No

ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE

SIGNATURE OF ATTORNEY OF RECORD

DATE
May 31, 2007